HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v.
GEORGE W. CLUCK AND WIFE.

Decided January 14, 1903.

1.—Easement—Assignability.

It seems that the common law distinction between easements in gross and those appendant, with reference to their assignability, has been changed by article 308, Rev. Stats., and that they are now alike assignable, except as to matters involving personal trust or skill.

2.—Homestead—Easement—Grant by Husband Alone.

The right for an indefinite period, to take and use the waters of a spring and to erect a pump and lay pipes in the soil for that purpose was such use and appropriation of a part of the homestead of the family as could not be granted by the husband alone.

3.—Value of Use of Land.

While the use of land and water might be assumed, as matter of common knowledge, to be of some value, there must be evidence of its value to support a recovery of damages in the sum of $50.

Appeal from the District Court of Travis. Tried below before Hon. R. L. Penn.

*S. R. Fisher* (*Baker, Botts, Baker & Lovett,* of counsel), for appellant.

*John Dowell,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by Cluck and wife against the Houston & Texas Central Railway Company in trespass to try title and for damages and for injunction. The land sought to be recovered is situated in Williamson County, a part of the Samuel Damon league, and described as follows: "Beginning at the northwest corner of the original survey of 500 acres, known as the Floyd farm on the road from Austin to Burnet on the west boundary line of said Damon league, a pile of rocks for corner; thence south 19 E. 2240 varas to a corner on the bank of Brushy Creek, a live oak 5 in. dia. north 25 west 11 vrs.; thence with the meanders of said creek, as follows N. 82 W. 237 vrs.; S. 75 W., 170 vrs. to the mouth of a small branch; thence up said branch running west, 121 vrs. S. 51 W. 71 south 30 vrs. to corner of the aforesaid road and a bluff of said branch, a Spanish oak 7 in. dia. N. 58 E. 5 vrs. thence S. 71 W. 298 varas to a rock pile for corner on the aforesaid west boundary line of said Damon league; thence N. 19 W. 2132 varas with said line to beginning."

It is averred in the petition that the dwelling house, stables and lots belonging to the plaintiff and his wife are situated upon the premises above described, and constitute the homestead of the appellee, and has been so occupied and used as a homestead since the 3d day of December, 1873. That the appellant on the 23d day of August, 1901, forcibly entered upon and took possession of a part of the premises, and has placed and erected thereon, and is now operating and maintaining

thereon an engine, piping and engine house, and has taken possession of a large and valuable spring on said premises, and has connected the same to a water tank, for supplying engines on appellant's road; and is using same and appropriating the water out of the spring to the value of $600 per month. It is also averred that the fair and reasonable rental value of the land, independent of the water appropriated and consumed by the defendant, is the sum of $25 per month.

Defendant answered with a plea of not guilty and disclaimed all right, title and interest in and to any part of the land, except the following:

"1. So much thereof as is embraced and contained within the land appropriated for the purpose of laying and in laying a pipe line from the water tank of defendant at Cedar Park station to a spring at or near the house of plaintiff, and for the erection thereat of a pump connected with said pipe line and tank, as more fully appears from the contract of April 22, 1895, hereinafter set out.

"2. So much and such parts thereof as are embraced in a deed of conveyance from G. W. Cluck and H. L. Cluck, his wife, to the Austin & Northwestern Railroad Company, of date December 7, 1881, conveying a right of way to said railroad over and through the land sued for.

"3. So much thereof as is embraced in a deed of date August 5, 1892, executed by the said G. W. Cluck and H. L. Cluck, his wife, to the Austin & Northwestern Railroad Company, upon which tract is situated the section house of defendant.

"Defendant pleaded the act of the Legislature authorizing and the deed of date August 22, 1901, carrying out the sale of the Austin & Northwestern Railroad to the Houston & Texas Central Railroad Company, conveying to said company all and singular the property, real, personal and mixed, railroad, franchises, privileges, contracts, choses in action and property of every sort and description of the Austin & Northwestern Railroad Company."

Plaintiffs replied by supplemental answer, which contained the following averments:

"And plaintiff further avers that said defendant the Houston & Texas Central Railroad Company pretend and claim to be the assignees of a written contract by and between the Austin & Northwestern Railroad Company, by A. N. Leitnaker, vice-president and general superintendent, of date on or about the 22d day of April, A. D. 1895, and one of these plaintiffs, G. W. Cluck, which said contract is in words and figures substantially as follows, viz:

" 'State of Texas, County of Travis. This agreement this day made and entered into between the Austin & Northwestern Railroad Company, of the one part, and G. W. Cluck, of the County of Williamson, State of Texas, of the other part, witnesseth:

" 'That the said G. W. Cluck, for and in consideration of the sum of one dollar cash to him in hand paid, and other valuable considerations to him from the said Austin & Northwestern Railroad Company, moves,

agrees and consents that the said Austin & Northwestern Railroad Company, its agents, servants and employes, shall and may freely enter in upon his land and dig in and break the surface thereof and lay therein and thereon a pipe line from the water tank of the Austin & Northwestern Railroad Company at Cedar Park station to the spring at the house of the said G. W. Cluck, and erect thereat a pump connected with said pipe line and tank, for the purpose of drawing and conveying water from said spring to said tank, and that said Austin & Northwestern Railroad Company shall have free use of the water the spring will afford, without charge, with permission at all times for the officers, agents, servants and employes of said company to enter in upon and go over and along the land and premises of the said G. W. Cluck, and all permission to said Austin & Northwestern Railroad Company, its officers, agents and servants and employes to remove said pipe and pump, when in their judgment they may desire so to do.

" 'That the said Austin & Northwestern Railroad Company shall, for and in consideration of the rights and privileges conceded to it by the said Cluck, put in and furnish him inside the boundaries of his land at Cedar Park station one hydrant of one-half inch diameter for watering stock from the tank of the Austin & Northwestern Railroad Company. Also one-half hydrant at his residence.

" 'In testimony whereof, the parties hereto have, on this the 22d day of April, 1895, executed this instrument in duplicate, the said G. W. Cluck subscribing his name thereto, and the said Austin & Northwestern Railroad Company, through A. N. Leitnaker, its vice-president and general superintendent, subscribing thereto its corporate name.

" 'The Austin & Northwestern R. R. Co., By A. N. Leitnaker, Vice-President and General Superintendent. G. W. Cluck.'

"Which fact of ownership is not admitted but expressly denied, and that by virtue of the same the said defendant is and has been trespassing upon said land as aforesaid. Plaintiffs aver that said contract is invalid and void and is now and never was binding upon them or either of them, and that the said land at the time of the making of said contract was the homestead of plaintiffs, and has been ever since, with plaintiffs actually residing thereon as their homestead, as averred in their original petition in this case, and that said H. L. Cluck, one of the plaintiffs, the wife of the said George Cluck, and who was his wife at the time of executing said contract, did not sign and acknowledge said contract in the way and manner required by law for the disposition of their homestead, and that said contract is also void and of no force and effect, for and because the same is for an indefinite and uncertain period of time; and further that the said contract does not authorize the said Austin & Northwestern Railroad Company to transfer the same to defendant or anyone, and that for and on account of these facts, the said defendant is and are, and have always been, trespassers, as alleged in plaintiff's original petition; that the use and occupation of said land by said defendant and its assignees materially interferes with these plaintiffs'

homestead rights and their occupation of said land as a homestead; and that said defendants have been digging large holes therein, taking the water therefrom and converting it to its own use and benefit, and has erected a pump house, 10 by 12 feet, and coal pen of about 15 by 12 feet, with coal stand therein, and are pumping and running said pump day and night, and on Sundays, at times making noise and annoying said plaintiffs and their family, and have absolutely taken charge of his spring and dug it out to a width of about 10 by 12 feet, and have absolutely taken and deprived plaintiffs of the land converted by said spring house and coal house. Wherefore, plaintiffs say that said contract is invalid, and plaintiffs should have judgment as prayed for in their original petition.

"And plaintiffs further aver that if said contract was and is valid, that the said defendant succeeded and has the rights of the Austin & Northwestern Railroad Company in said contract, all of which are not admitted but expressly denied, then plaintiffs say that the consideration of said contract has failed in part, if not in whole, all of which facts said defendant its agents and representatives well knew; that said contract between the said Austin & Northwestern Railroad Company and G. W. Cluck was for one dollar and other valuable considerations as expressed therein; that one of the other valuable considerations was that one of these plaintiffs, to wit, G. W. Cluck, was to have the running and operation of the pump at Cedar Park, Texas, for the conveyance of the water into the tank of the Austin & Northwestern Railroad Company, and of distributing the same from said tank into the engines and other places needed by said Austin & Northwestern Railroad Company, so long as said Austin & Northwestern Railroad Company kept and maintained the same there, and used and acted under said contract, for which the said Austin & Northwestern Railroad Company was to pay plaintiff, G. W. Cluck, the sum of fifteen dollars per month. That in accordance with such, the said Austin & Northwestern Railroad Company turned said pump, work and labor and the operation of said pump at said place over to the said G. W. Cluck only for a very short and limited period of time, to wit, the space of only about two or three months, viz., from about the 25th of April, 1895, to about the 25th of June, 1895, and then removed him, and took said work and labor and employment from him over his objection and gave it to another, to his great damage and detriment, thereby breaking said contract; that the principal consideration and object plaintiff G. W. Cluck had in making said contract was to get said employment and the wages resultant therefrom. These plaintiffs further aver that in violation of said contract, and in detriment to plaintiffs' rights in said water and spring the said Austin & Northwestern Railroad Company, also for profit to itself, took water from said spring and sold the same to others, to wit, for the operation of a cotton gin and mill at Cedar Park, Texas, which were not authorized in the use and taking of said water under said contract, and which also broke and forfeited said contract. And that for and on account of

all such there is a failure of consideration of said contract and a breach of the same, and for all of which plaintiffs pray judgment as in their original petition."

The trial resulted in a verdict and judgment for the defendant for tracts 2 and 3 and for plaintiff for the balance of the land, including tract 1, but with the proviso that the defendants might enter upon said land and remove therefrom its appliances, machinery and property occupying the same. Said verdict and judgment were in favor of plaintiffs on their prayer for injunction, restraining defendants from entering upon tract 1 for any purpose except for removing its property therefrom, and from taking and using water from the above mentioned spring; and further for damages against the defendant in the sum of $50. From this judgment the appellant appealed.

We find the following facts: That the land and property described in the plaintiffs' petition is a part of the plaintiffs' homestead, and was their homestead on the 22d day of April, 1895, and long prior thereto. That on the 22d day of April, 1895, the Austin & Northwestern Railroad Company and the plaintiff G. W. Cluck entered into a contract as above described and set out in the plaintiffs' supplemental petition. The appellee Mrs. Cluck did not join in the execution of that contract. The spring and the premises therein described was then and is now situated upon the homestead of appellees. After the execution of that contract, the Austin & Northwestern Railroad Company entered upon the premises and erected at the spring a pump, pump house, boiler and shed for coal, and from the spring laid a pipe about 400 or 450 yards long to a tank on the right of way on the Austin & Northwestern Railroad. From the time of the erection of said pump, etc., the Austin & Northwestern Railroad used the water in the spring and occupied and controlled the improvements so erected at the spring.

On the 28th day of March, 1901, by special act of the Legislature, the appellant, the Houston & Texas Central Railroad Company, was authorized to purchase, own and operate all the property, real, personal and mixed, franchises, privileges, contracts and choses in action of the Austin & Northwestern Railroad Company; and authorized the latter road to sell and convey the same to the Houston & Texas Central Railroad Company. In pursuance of this act the Austin & Northwestern Railroad Company on August 22, 1901, executed a conveyance to the Houston & Texas Central Railroad Company. Thereafter, the appellant took charge of said road and used the water in the spring and controlled and operated the pump, pump house, etc., located at the spring, and the pipe running from there to the tank on appellant's right of way. About twenty-five feet square is the amount of land occupied by the pump, pump house and coal bin at the spring. There are also pipes leading to the store of one Emmet Cluck, son of the plaintiffs, and also to the premises of the plaintiffs, through which water is furnished to them. The estimate is that about 12,500 gallons of water is pumped daily from the spring. Some of this is used by Mr. Emmet Cluck and by the plaintiffs

and by the railway company, and some is used by a gin, as long as the ginning season lasts.

There is evidence to the effect that the plaintiffs use about 400 gallons of the water a day. The appellee Mrs. Cluck did not give her consent to the Austin & Northwestern Railroad Company or the appellant to enter upon the premises in question and use the water in the spring, and such entry and use was against her will. There is evidence tending to show that the water from the spring could be used by the plaintiffs for domestic purposes and for irrigating.

It does not appear that the plaintiffs consented to the assignment of the contract in question as set out in their supplemental petition, by the Austin & Northwestern Railroad Company to the appellant. From the manner in which the question is treated in the briefs of the parties, it appears that the trial court held that the contract in question was not assignable. This upon the ground that it was an easement in gross; and this ruling is assigned by the appellant as error. It is unnecessary for us to undertake to distinguish between an easement in gross and appendant, nor to review the rules of the common law that authorize an assignment of the latter and deny it to the former; for, except in matters of personal trust or skill, article 308 of the Revised Statutes has, in effect, changed the rule of the common law upon this subject; and by virtue of this provision of the statute, many contracts and rights can be transferred which were not assignable at common law. And we think that the contract in question falls within the class that may be assigned under the section of the law mentioned. This construction of the statute is, in a measure, warranted by what is said by the Supreme Court in the case of Missouri, K. & T. Railway Co. of Texas v. Carter, 95 Texas, 461.

Therefore, we are inclined to the view that the trial court erred in not holding that the appellant acquired all the right and interest of the Austin & Northwestern Railroad Company under the contract in question. But this view will not lead to a reversal of the judgment of the trial court upon the main question in the case, because the undisputed evidence in the records shows that the property in controversy was at the time that the contract was executed, before and since, the homestead of the appellees; and that by reason of Mrs. Cluck's not having joined in its execution, the contract is void.

The use of the spring in question and the land surrounding it occupied by the improvements erected thereon by the Austin & Northwestern Railroad Company, together with the pipe laid from the spring to the right of way, was a use and appropriation of a part of appellees' homestead, without the consent of Mrs. Cluck. The spring and the land adjoining it is a valuable part of the homestead, which the appellant, under the contract in question, would have the right to control and use at will, for as long a time as it should see fit to use it, or until the railroad in question should cease to exist. There is no limitation as to time when the contract should terminate. The effect of its terms is to per-

mit the railroad company to invade the homestead of the appellees, and to take possession of so much of the land and use the same, as is necessary to erect pipe lines from the tank to the spring and to erect pump and appliances necessary to obtain water from the spring.

The conveyance in question, while under the guise of a contract, is really tantamount to an attempted conveyance of an interest in the spring, and land sufficient upon which to erect pumps and appliances, etc., and pipe lines to the appellant's right of way. The spring and the soil from which it flows, together with the portion of the premises occupied by the improvements erected and used by the railroad company, is a part of the realty, the conveyance of which would have a tendency to curtail the homestead interest, and would, to some extent, interfere with its beneficial use and enjoyment.

An attempted conveyance of a part of the homestead without the consent of the wife is as much within the prohibition of the law as a conveyance of the entire homestead. The principle announced in the Southern Oil Co. v. Colquitt, 28 Texas Civ. App., 292, controls this question. A writ of error was denied by the Supreme Court in that case. The contract in question, in order to be effective, in effect authorized the railroad company to enter upon the premises, the homestead of the appellees, in order to obtain the beneficial use and enjoyment of the water, there to dig into the soil and break the surface, lay pipes and erect a pump and structures that they might deem necessary. The right here granted necessarily implies the use and possession, to some extent, of the premises, in order to accomplish the purposes intended by the contract; and not only occasionally, such as might be acquired by a license from the husband alone, but as frequently and as often and for as long a time as the appellant might desire.

This view of the question is analogous to the point decided in Coates v. Caldwell, 71 Texas, 21. The exemption of matured crops growing upon the homestead was, in that case, conceded upon the principle that in order to make the levy and seize the crops, the officer must necessarily invade a part of the homestead and take possession of the same for a time.

Appellant has an assignment of error which complains of the charge of the court in submitting to the jury the issue of damages. The plaintiffs recovered a judgment for $50 damages.

There is no evidence in the record which shows the market value of the land occupied by the appellant, or the value of the water used and consumed by the railroad company. There is evidence which shows that the land and the water furnished by the spring were serviceable and useful to the appellees; but there is no evidence whatever showing what was the value of the water used and consumed by the appellant, or what was the rental value of the land occupied and used by the railroad company. While it might be assumed as a matter of common knowledge that land and water might be of some value, still proof must be offered showing the amount of this value, in order that the jury might intelli-

gently reach some conclusion as to the amount of damages sustained by the injured party. The evidence on this branch of the case is not satisfactory. In fact there is no evidence in the record tending to show the amount of damages sustained by the plaintiffs. And so much of the judgment as is in plaintiffs' favor for damages will be reversed.

The judgment of the trial court on the other branch of the case is affirmed. The costs of the appeal will be taxed against the appellees.

*Affirmed in part and reversed and remanded in part.*